IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHAWN RANDALL, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Case No. 3:22-CV-2146-MAB |
| JOSHUA SCHOENBECK, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Joshua Schoenbeck, Anthony Jones, Nathan McCarthy, Angela Walter, and Anthony Wills (Doc. 28; *see also* Doc. 29). For the reasons set forth below, Defendants' motion for summary judgment on the issue of exhaustion is GRANTED in part and DENIED in part (Doc. 28).

### BACKGROUND

Plaintiff Shawn Randall filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights while incarcerated at Menard Correctional Center (*see* Doc. 1). Plaintiff's complaint alleges that on October 9, 2021, he received a disciplinary ticket and was placed on "deadlock status," meaning he was locked in his cell and could not leave to attend yard or any other activities (*Id.* at p. 8). On October 18, 2021, Plaintiff was told by a correctional officer that he was on deadlock that day and wouldn't be able to attend yard (*Id.*). Plaintiff alleges that later that day, while he was locked in his cell, a fight broke out in the yard amongst the inmates (*Id.*).

Nevertheless, Plaintiff was placed under investigation by internal affairs for his purported involvement in the fight in the yard (*Id.*). On October 27, 2021, Plaintiff received a disciplinary ticket from McCarthy for dangerous disturbance, assault, and disobeying a direct order essential to safety and security for his involvement in the fight in the yard on October 18, 2021 (*Id.*).

Plaintiff challenged his disciplinary ticket in front of Adjustment Committee members Schoenbeck and Jones on November 3, 2021 (*Id.*). Plaintiff told them that he was on deadlock on October 18, 2021, and therefore, could not have been involved in the yard fight (*Id.*). In the end, the Adjustment Committee found Plaintiff guilty and sanctioned him to ninety days in segregation and ninety days C grade (*Id.* at p. 9). Plaintiff alleges the Adjustment Committee failed to investigate whether he was on deadlock and altogether ignored his exonerating evidence (*Id.*). Subsequently, Plaintiff wrote to Warden Wills about the Adjustment Committee's mistakes, but Wills turned a blind eye to the committee's alleged misconduct (*Id.*).

Meanwhile, on November 2, 2021, just one day before his Adjustment Committee hearing, Plaintiff was in segregation for his alleged involvement in the yard fight (*Id.*). At around 4:00 p.m., Plaintiff was awoken when a dinner tray was delivered to his segregation cell (*Id.*). Plaintiff, who was very hungry at the time, immediately started eating the meal without first turning on the lights (*Id.*). He bit into something hard and chewy, which he partially swallowed and partially spit out (*Id.* at p. 10). At that point, Plaintiff turned on the lights and discovered that he had been eating a mouse head (*Id.*). Plaintiff vomited and started screaming for help, but Nurse Walters and another

correctional officer ignored him as they walked by in the gallery (*Id.*). Plaintiff continued to yell for medical attention until a correctional officer stopped and came to his cell (*Id.*). The officer observed the mouse in Plaintiff's food tray and mouse pieces were also discovered in other inmates' food trays (*Id.*). A sergeant then came to Plaintiff's cell and stated he would get him medical attention (*Id.*).

Plaintiff and other inmates whose dinner trays contained mouse pieces were taken to see Nurse Walters who said there was nothing she could do for them (*Id.* at p. 11). Nurse Walters then made insensitive jokes about how they had eaten "Stewart Little" and that it was fortunate they ate a baby mouse and not the mama mouse (*Id.*). Nurse Walters did not give Plaintiff any medication for his stomachache or headache, ignored his complaints, and sent him back to his cell (*Id.*). Plaintiff alleges he experienced vomiting, stomach pains, chills, headaches, and diarrhea that night (*Id.*). Afterwards, Plaintiff put in numerous additional calls for medical and mental health treatment but his concerns were never addressed (*Id.*)

Plaintiff raised five counts in his initial complaint (*Id.*; *see also* Doc. 7 at p. 3). Following a threshold review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on the following claims[1]:

> Count 1: Fourteenth Amendment claim against McCarthy for issuing Plaintiff a false disciplinary ticket for the October 18, 2021 incident and Schoenbeck, Jones, and Wills for due process violations in the disciplinary proceedings for that disciplinary ticket.

---

[1] Pursuant to the threshold review Order, Plaintiff's third, fourth, and fifth counts were dismissed without prejudice for their failure to state a claim (*see* Doc. 7 at pp. 4-5). Additionally, Plaintiff's second count was only permitted to proceed against Nurse Walters, but not against Correctional Officer Mifflin (*Id.* at p. 4).

> Count 2: Eighth Amendment claim against Walters [sic] for exhibiting deliberate indifference to Plaintiff's serious medical and mental health needs.

(Doc. 7 at pp. 3-5).

Defendants filed a motion for summary judgment on the issue of exhaustion on June 7, 2023 (Docs. 28, 29). Plaintiff filed his response in opposition on July 25, 2023 (Doc. 33). Defendants did not file a reply brief in support.

## LEGAL STANDARD

### I. *Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining whether a movant is entitled to summary judgment, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). Courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

## II. Exhaustion Requirements

Pursuant to the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner failed to abide by the procedures for pursuing relief. *Id.* Accordingly, to properly exhaust his or her administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

An inmate is not, however, required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018); *see, e.g.*, *Ramirez v. Young*, 906 F.3d 530, 537 (7th Cir. 2018) (grievance procedure was unavailable where prisoner was not notified of their existence because of his lack of English proficiency). Additionally, failure to exhaust is an affirmative defense that the defendants carry the burden of proving. *Ramirez*, 906 F.3d at 533. "To meet their burden, the defendants must show beyond dispute that remedies were available." *Id.* at 534.

## III. IDOC Grievance Procedures

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance process outlined in the Illinois Administrative Code to

exhaust their administrative remedies. *See generally* 20 Ill. Admin. Code § 504.800, *et seq.* (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor responds, an inmate may submit his grievance to a grievance officer, who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b).

## Discussion

### I. Plaintiff's Grievances

Defendants and Plaintiff have provided the Court with grievances and related records from the period in question (*see generally* Doc. 1 at pp. 15-19; Doc. 29-1). Notably,

there are two grievances applicable to Plaintiff's claims.

**A. Grievance #181-11-21, dated 11/8/21 and received 11/12/21 (Doc. 29-1, pp. 5-6)**

Plaintiff submitted grievance 181-11-21 on November 8, 2021 (Doc. 29-1 at pp. 5-6). In the grievance, Plaintiff stated that he was placed on deadlock status the day the yard fight occurred (*Id.* at p. 5). Plaintiff claimed his cellmate and two other inmates were also on deadlock that day for the same ticket (*Id.*). Plaintiff emphasized that there was no possible way he could be guilty of fighting in the yard while also locked in his cell (*Id.* at p. 6). Plaintiff argued there were several ways the investigating officers could have discovered that he was not present for the fight, but they failed to consider those factors and chose to ticket him anyways (*Id.*). Plaintiff also complained of the conditions he was experiencing during his segregation (*Id.*).

The grievance officer received Plaintiff's complaint on November 11, 2021 (*Id.* at p. 3). The grievance officer's report states that she "reviewed IDR, Master file, Incident reports, Ticket summary, DR 504 procedures and contacted the Adjustment Committee and investigations and intelligence." (*Id.*). The grievance officer determined Plaintiff was correctly found guilty of the ticketed offense and also noted that Plaintiff would not have been placed on deadlock for his prior infraction because it was a minor infraction (*Id.* at p. 4). The warden concurred with the grievance officer's decision on December 16, 2021 (*Id.* at p. 3).

Plaintiff appealed the decision to the ARB on January 27, 2022 (*Id.*). The ARB received the grievance on February 7, 2022, and denied it one month later on procedural grounds because Plaintiff did not appeal within 30 days of the warden's decision (*Id.* at

p. 2). However, as will be discussed further below, Plaintiff avers that he sent his appeal to the ARB immediately after the warden's decision and has provided an undated letter received by the ARB on February 7, 2022, that questions why he did not receive a response on his appeal of grievance 181-11-21, which was filed over a month and a half ago (*Id.* at p. 7).

**B. Grievance #245-11-21, dated 11/13/21 and received 11/16/21 (Doc. 29-1, pp. 11-12)**

Plaintiff filed a second grievance on November 13, 2021 (Doc. 29-1 at pp. 11-12). In grievance 245-11-21, Plaintiff discussed the incident involving him eating a mouse head (*Id.*). Plaintiff recollected how he began eating his dinner tray in the dark while in segregation but stopped when he bit into something chewy and hard (*Id.* at p. 12). He turned on the lights to see what he was eating and vomited upon seeing the mouse's head (*Id.*). Plaintiff wrote that Nurse Walters and his gallery officer walked by his cell door but ignored his cries for help (*Id.*). When his gallery officer returned and then notified other prison staff of the situation, Plaintiff and two other inmates were taken to see the nurse, mental health, and internal affairs (*Id.*). Plaintiff claimed that "[a]s soon as the nurse Angie Walters walked in she told us as a whole there is 'nothing' she can do to help us. Then she started making jokes saying 'we ate Stewart Little' at least it was cooked it made it taste better." (*Id.*). Plaintiff grieved of how he received no further medical aid and was taken back to his cell, where he suffered from sickness all night (*Id.*).

The grievance officer received Plaintiff's grievance on November 18, 2021 (*Id.* at p. 9). The grievance officer's response included a quote from Warden Wills that "Menard Correctional Center Administrative team is fully aware of the food contamination on

November 2, 2021. The situation is being fully investigated." The grievance officer then discussed how Nurse Walters was contacted after the incident, and that Nurse Walters and Dr. Meyers agreed there was no medicine they could give or tests they could run (*Id.*). The grievance officer further noted that Health Care said Plaintiff had not put in any sick calls following the incident. (*Id.* at pp. 9-10). Accordingly, the grievance officer recommended Plaintiff's grievance be denied (*Id.* at p. 9). The warden concurred in the recommendation on November 22, 2021 (*Id.*). Plaintiff timely appealed his grievance to the ARB on November 25, 2021 (*Id.*). The ARB received Plaintiff's grievance on December 1, 2021, and responded five days later, denying Plaintiff's claims about staff misconduct but affirming Plaintiff's claims about food contamination (*Id.*). No further aid was provided.

II. *Count I and Grievance 181-11-21*

Defendants argue Plaintiff failed to exhaust grievance 181-11-21 for two reasons. First, they claim Plaintiff failed to properly appeal the warden's decision to the ARB within 30 days as required by § 504.850(a) (*see* Doc. 29 at p. 9). Second, they argue that Plaintiff's grievance fails to name or identify any of the Defendants as required by § 504.810(c) (*Id.* at p. 10). In response, Plaintiff claims that he did appeal the decision to the ARB within 30 days but that the facility delayed his appeal (Doc. 33 at pp. 2-4). Plaintiff also replies that he complied with § 504.810(c)'s identification requirements by challenging the false ticket and the Adjustment Committee's ruling, necessarily challenging the actions of the ticketing officer and committee members (*Id.* at pp. 4-6).

The Court first considers whether Plaintiff's appeal was filed within 30 days as

required by § 504.850(a). Significantly, the appeal date on the grievance officer's report supports Defendants' claim as it is dated January 27, 2022 (Doc. 29-1 at p. 3). However, Plaintiff has challenged the legitimacy of that date by alleging that: (1) he appealed immediately (and thus, well within 30 days), (2) prison authorities were in complete control of his appeal and stalled, and (3) that officials may have purposely hindered his appeal in retaliation for his grievances (*see generally* Doc. 33 at pp. 2-4). In other words, Plaintiff has advanced an argument that the exhaustion process was rendered unavailable to him by the facility. Furthermore, Plaintiff cites to a letter he wrote to the ARB that specifically references grievance 181-11-21 and inquires as to why he has not received a response (Doc. 29-1 at p. 7). Significantly, that letter questioning what happened to his appeal was received on the exact same day as his actual appeal. These arguments, accompanied by Plaintiff's letter, raise a critical question regarding whether the grievance process was rendered unavailable to Plaintiff.

Turning next to the issue of identification, § 504.810(c) provides that a "grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." In interpreting this decision, numerous cases have unambiguously held that a grievance must identify who their target is or implicate their target in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but

it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing."); *Walker v. Harris,* No. 3:19-CV-00664-MAB, 2021 WL 3287832, at *4 (S.D. Ill. Aug. 2, 2021) ("Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris.").

As a result, Defendants argue Plaintiff failed to exhaust his claim against McCarthy, the officer who issued him the allegedly fraudulent ticket for fighting in the yard (Doc. 29 at pp. 9-10). While it is true that grievance 181-11-21 does not directly name McCarthy at any point, Plaintiff contends that it is enough that he was challenging the ticket as fraudulent because such a challenge necessarily implicates the ticketing officer (Doc. 29-1 at pp. 5-6). Grievances are intended to provide prison officials an opportunity to address shortcomings, not to put individual defendants on notice. *See Sanchez v. Beshears*, No. 3:18-CV-1328-GCS, 2020 WL 4219961, at *2 (S.D. Ill. July 23, 2020) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)). It is clear from the context of Plaintiff's grievance and his numerous references to the ticket that he was challenging the validity of the ticket and the report of the officer who issued it (*see also* Doc. 1 at p. 16) (the disciplinary ticket issued by McCarthy). *See Hall v. Maue*, No. 12-CV-0204-MJR-SCW, 2014 WL 722399, at *7 (S.D. Ill. Feb. 25, 2014) ("Thus, the undersigned finds that Plaintiff adequately identified

the Defendants in his grievance as it was very clear, when read in conjunction with the disciplinary report, who the individuals were Plaintiff was referring to."); *Saffold v. Illinois Dep't of Corr.*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) ("Here, Saffold provided a detailed account of the shakedown – including the date it occurred, as discussed below – sufficient to allow prison officials to deduce which individuals were present at and involved with the shakedown.").

Defendants also contend that Plaintiff failed to identify Schoenbeck, Jones, and Wills (Doc. 29 at p. 10). This argument fails for similar reasons in regards to Schoenbeck and Jones. Defendants have not disputed that Schoenbeck and Jones were the Adjustment Committee members who reviewed Plaintiff's disciplinary ticket (*see* Doc. 1 at p. 18) (containing the Adjustment Committee Final Summary Report). Moreover, Plaintiff's grievance challenged the Adjustment Committee's decision and failure to consider evidence favorable to him (Doc. 29-1 at p. 6). As such, Plaintiff's statements challenging the Adjustment Committee's decision were sufficient to identify the Adjustment Committee members who ruled upon Plaintiff's disciplinary appeal. *See Hall*, 2014 WL 722399 at *7.

However, regarding Warden Wills, the Court finds Plaintiff did not identify Wills in grievance 181-11-21. Plaintiff has not alleged, and it does not appear from the face of the ticket or Adjustment Committee report, that Wills was involved in or signed off on either the allegedly fraudulent disciplinary ticket or the purportedly erroneous Adjustment Committee findings. Therefore, unlike with the ticketing officer (McCarthy) and Adjustment Committee members (Schoenbeck and Jones), there is nothing in

Plaintiff's grievance, the accompanying documents, or the alleged wrongdoings themselves, that implicates Wills. In fact, even the nature of Plaintiff's claim against Wills demonstrates that Plaintiff's challenge to Wills was about Wills' failure to respond after Plaintiff wrote Wills a letter challenging the Adjustment Committee's conduct (*see* Doc. 1 at p. 9). Unquestionably, if Plaintiff's grievance meant to identify Wills based upon his turning a blind eye after Plaintiff wrote him a letter, Plaintiff should have at least alluded to such in grievance 181-11-21. *See Walton v. Scott*, No. 17-CV-664-SMY-RJD, 2018 WL 3242146, at *2 (S.D. Ill. July 3, 2018) (granting a motion for summary judgment where the plaintiff's grievance failed to name, identify, or describe the two defendants in question and also failed to even mention the issues raised in his lawsuit); *Williams v. Myers*, No. 20-CV-290-SMY, 2021 WL 3619867, at *3 (S.D. Ill. Aug. 16, 2021) (granting summary judgment where plaintiff failed to name or describe the defendant in question). For these reasons, the Court GRANTS Will's motion for summary judgment based upon Plaintiff's failure to exhaust administrative remedies.

However, due to the factual issues identified above regarding the timeliness of Plaintiff's appeal of grievance 181-11-21 to the ARB, summary judgment for Defendants McCarthy, Schoenbeck, and Jones is inappropriate and must be DENIED. Plaintiff has clearly identified or referenced the issues in his claim against these three Defendants. Accordingly, the only question for the evidentiary hearing is whether Defendants can carry their burden on the affirmative defense of exhaustion, in light of Plaintiff's uncontested allegations that the process was rendered unavailable to him. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). If Defendants wish to continue to pursue the

affirmative defense of failure to exhaust administrative remedies, they must request a *Pavey* hearing within 14 days of this Order. If Defendants opt not to pursue this affirmative defense further or determine a hearing is not necessary and decline to request one, the Court will enter a scheduling order for discovery on the merits of this case.

III.     *Count II and Grievance 245-11-21*

Defendants also argue that grievance 245-11-21 failed to sufficiently identify Nurse Walters (Doc. 29 at pp. 10-11). Following a facial review of Plaintiff's grievance, the Court is not persuaded by this argument.

For one, grievance 245-11-21 seeks relief for inhumane living conditions and unsanitary conditions due to medical staff's denial of his request (Doc. 29-1 at p. 11). Moreover, the grievance alleges that a nurse walked by his cell after he was calling for aid and failed to help him (*Id.* at p. 12). Plaintiff's grievance also makes clear that the nurse in question who failed to provide him with medical aid was "Angie Walters." (*Id.*). Specifically, Plaintiff challenged both her refusal to provide him with any meaningful medical aid and her insensitive jokes about eating "Stewart Little" (*Id.*). Nothing in Defendants' motion contradicts this argument or explains why it was insufficient to identify his claim against Nurse Walters. In addition, the grievance officer's report directly discusses Nurse Walters, further demonstrating that it was abundantly clear who Plaintiff's complaint was targeting (Doc. 29 at p. 9). As such, the Court finds Plaintiff sufficiently identified Nurse Walters and his complaints against her, thus exhausting his administrative remedies on his claim against her. *Compare Saffold*, 2021 WL 4477930 at *7 (finding the plaintiff provided sufficient information to identify the defendant even when

the plaintiff never directly named the defendant because the prison could deduce who was involved based upon the grievance), *with Roberts*, 745 F.3d at 236 (finding a failure to exhaust where the grievance only mentioned complaints against a doctor, but the plaintiff was actually seeking to bring suit against a nurse). For these reasons, Walters' motion for summary judgment based upon the failure to exhaust administrative remedies is DENIED.

## CONCLUSION

The motion for summary judgment on the issue of exhaustion filed by Defendants is GRANTED in part and DENIED in part (Docs. 28, 29). It is granted as to Defendant Wills and DENIED as to Defendants McCarthy, Schoenbeck, Jones, and Walters. Judgment will be entered in Defendant Wills' favor at the conclusion of this case.

Additionally, if Defendants McCarthy, Schoenbeck, and Jones wish to further pursue their affirmative defense of exhaustion regarding the timeliness of Plaintiff's appeal of grievance 181-11-21, they must file a notice within **14 days** of this Order requesting a *Pavey* hearing. If a hearing is requested, Defendants shall identify the witnesses they intend to call to testify as well as the subject matter of each witness. If no request is made, the Court will enter a scheduling order for discovery on the merits of this case.

**IT IS SO ORDERED.**

**DATED:** March 19, 2024

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**